```
               IN THE UNITED STATES DISTRICT COURT
             FOR THE EASTERN DISTRICT OF PENNSYLVANIA

VILNA GASTON, et al.          :     CIVIL ACTION
                              :
          v.                  :
                              :
EXELON CORPORATION            :     NO. 06-4762
```

<u>MEMORANDUM</u>

Dalzell, J.                                    November 30, 2007


On June 14, 2007, we granted in part Exelon's motion to strike plaintiffs' class allegations from the complaint, finding that "plaintiffs could, within the bounds of [their] complaint, move to certify a class based predominantly on their allegations of systemic discrimination."  Order of June 14, 2007 (docket entry # 26) ("June 14 Order") ¶ (hh).  Plaintiffs, for reasons that we cannot fathom, have ignored this advice (and, indeed, nearly all of the June 14 Order) and now ask us to certify a class that lacks any unifying principle and is unsupported by the statistical evidence they have produced.  They leave us no choice but to deny their motion.


I.  **Factual and Procedural Background**

The eight named plaintiffs are black current or former employees of two Exelon entities in the Philadelphia area, PECO and Exelon Business Services Company ("EBS").  They allege that

Exelon's facially neutral[1] review and promotion practices "grant[] managers discretion to discriminate against Black employees." Pl. Mem. at 7.  In particular, plaintiffs challenge Exelon's employee evaluation procedure, its talent spotting or 9-box process, its promotion decisions, and its compensation decisions.[2]

On April 23, 2007, Exelon moved to strike the class allegations from plaintiffs' complaint, claiming that plaintiffs could prove no facts, consistent with their complaint, that would warrant class certification.  We found that, because plaintiffs sought significant monetary relief in the form of back pay, and because that relief was not incidental to the requested declaratory and injunctive relief, certification under Fed. R. Civ. P. 23(b)(2) was inappropriate.  We therefore struck the Rule 23(b)(2) allegations from the complaint.  With regard to

---

[1] Plaintiffs do not dispute that the practices they challenge are facially neutral.

[2] Although plaintiffs include in their voluminous brief nearly forty pages detailing the specific allegations of the named plaintiffs, we will not review them here.  The only issue before us at this stage is the suitability of this litigation for class action resolution.  The named plaintiffs' allegations, which are necessarily specific to their particular situations, cannot demonstrate the requisite commonality and are, therefore, not directly relevant to the motion before us in as much as they bring into sharper focus the reasons why class treatment is inappropriate.

plaintiffs' Rule 23(b)(3) claims, we found that, although most of plaintiffs' allegations were not amenable to class-wide proof, it was at least conceivable that plaintiffs could seek certification of a class that could meet the requirements of Rule 23.  We therefore denied Exelon's motion with respect to plaintiffs' Rule 23(b)(3) claims.

Plaintiffs now ask us to certify a class consisting of:

> All Black exempt employees of the Exelon subsidiaries or affiliates PECO and Exelon Business Services Company employed within the Philadelphia area at any time during the period October 24, 2002 to the present who have been or may be subjected to Exelon's challenged policies and practices that deny Black exempt employees equal opportunity with respect to compensation, promotions and performance evaluations.

Pl. Mem. at 2.

## II.  **Analysis**

The class action device is appropriate in cases where it "saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23."  General Tel. Co. of the Sw. v. Falcon, 457 U.S. 147, 155 (1982) (quoting Califano v. Yamasaki, 442 U.S. 682, 701 (1979)).  Class actions exist "not to penalize defendants, but to facilitate the resolution of complex claims affecting potentially large numbers

3

of similarly situated litigants."  <u>Donaldson v. Exelon Corp.</u>,
2006 WL 2668573 (E.D. Pa. Sept. 14, 2006) at *1.

In order to be certified as representatives of a class,
the named plaintiffs must show that:

> (1) the class is so numerous that joinder of
> all members is impracticable, (2) there are
> questions of law or fact common to the class,
> (3) the claims or defenses of the
> representative parties are typical of the
> claims or defenses of the class, and (4) the
> representative parties will fairly and
> adequately protect the interests of the
> class.

Fed R. Civ. P. 23(a).  In addition, the class action must be of
one of the types identified in Rule 23(b).  Choosing to ignore
our ruling that struck the Rule 23(b)(2) claims from the
complaint, plaintiffs seek certification under both Rule 23(b)(2)
and Rule 23(b)(3).  Rule 23(b)(2) provides for class actions
against defendants who have "acted or refused to act on grounds
generally applicable to the class, thereby making appropriate
final injunctive relief or corresponding declaratory relief with
respect to the class as a whole."  Rule 23(b)(3) permits class
actions where we find that "the questions of law or fact common
to the members of the class predominate over any questions
affecting only individual members, and that a class action is
superior to other available methods for the fair and efficient
adjudication of the controversy."

## A.   __The Class Description__

As a preliminary matter, we note that plaintiffs' class description itself defies straightforward certification.

The proposed class includes black employees in the requisite divisions and locations "who have been or may be subjected to Exelon's challenged policies and practices that deny Black exempt employees equal opportunity with respect to compensation, promotions and performance evaluations."  This definition makes membership in the class dependent on a determination that the challenged policies discriminate against black employees.  In order to determine who is a member of this class, we must first determine which, if any, policies and practices deny black employees equal opportunity and then determine which employees are subject to those policies. Plaintiffs provide us with neither sufficient evidence to make that determination nor any inkling of how we might do so at this juncture before the completion of merits discovery.  In the first instance, therefore, we cannot certify such a class because we cannot, on the factual record before us, determine conclusively that _anyone_ is, in fact, a member of such a class since doing so

would necessitate concluding that the challenged policies are, in fact, discriminatory.[3]

### B. **Expert Reports**

The parties have submitted competing expert reports in support of their respective views of the statistical evidence in this case.  Because of this, resolution of class certification will require some inquiry into the merits of plaintiffs' claims. In order to resolve the issue of class certification, we are permitted to undertake such an inquiry.  Newton v. Merrill Lynch, Pierce, Fenner & Smith, 259 F.3d 154, 168 (3d Cir. 2002).  We have noted before, however, that we should "limit that inquiry to the minimum necessary at this juncture."  In re Hydrogen Peroxide Antitrust Litig., 240 F.R.D. 163, 170 (E.D. Pa. 2007).

Plaintiffs' burden at this stage in the litigation is only to demonstrate that they meet the requirements of Rule 23. There is no requirement to prove the elements of their claim[4] but only to prove that those elements are amenable to resolution in a

---

[3] We also note, only in passing, that it is not at all clear to us that an employee who "may be subjected" to a challenged policy in the future has a ripe claim under Title VII. Since neither party addressed this issue in its briefs, we will simply mention it and move on.

[4] This is true except insofar as their class definition is based on a liability determination.  See supra § II.A.

class action format.  We are, therefore, not permitted to weigh
the parties' expert reports against each other and make
credibility determinations.  That is a question for a jury.  See
id. at 171.  To the extent, however, that uncontroverted elements
of defendant's expert report demonstrate that the case is
unsuitable for class resolution or identify ways in which
plaintiffs' analysis is incomplete, that is a proper subject of
inquiry at this stage.

A class action plaintiff in a Title VII action must
either show that a particular policy is discriminatory on its
face or must demonstrate that the policy has a discriminatory
impact on members of the protected class.  Here, as in most cases
of this sort, plaintiffs intend[5] to meet this burden with
statistical evidence.  Plaintiffs' expert, Dr. Mark R.
Killingsworth, performed a series of statistical analyses on
Exelon's human resources data in search of evidence of
discriminatory effects.

### 1.  __Pay Differential__

Dr. Killingsworth's first analysis looked at pay
differential based on race for the years 2002-2006.  In each of

---

[5] Because plaintiffs need not actually meet their
burden at this time, their intent is sufficient for class
certification purposes.

those years he found a statistically significant differential between the pay of white employees and that of black employees, controlling for the effects of sex, education, age, years of service, veteran status, and citizenship status.[6]

In relation to this finding, the parties hotly debate the impact of the Supreme Court's recent decision in <u>Ledbetter v. Goodyear Tire & Rubber Co.</u>, 127 S. Ct. 2162 (2007).  In <u>Ledbetter</u>, the Court found that for purposes of calculating the limitations period during which a plaintiff must file an EEOC charge, the relevant date was the date of the adverse employment action, not the date of the latest paycheck that reflected the effect of that action.  In other words, where an employee's pay has been artificially depressed because of a discriminatory act, the mere issuance of a paycheck is not a further discriminatory act and does not restart the limitations period.

Plaintiffs argue[7] that <u>Ledbetter</u> was not a pattern or

---

[6] Killingsworth performed a second set of calculations that also controlled for business unit and performance evaluation rating.

[7] Plaintiffs make this argument only in their reply brief.  Exelon has taken the unusual step of filing a response in opposition to plaintiffs' motion for leave to file a reply. Exelon attaches to that response an e-mail in which plaintiffs' counsel specifically agreed not to file a reply brief.  Although we are dismayed at counsel's decision to ignore his prior agreement with opposing counsel and seek to file a reply brief
(continued...)

practice case and, therefore, is distinguishable from the facts
here.  That is correct, as far as it goes.  Plaintiffs go on to
contend, much more dubiously, that Ledbetter does not "even apply
to pattern or practice cases, such as this one."  Pl. Rep. at 20.
In support of that proposition, plaintiffs cite three cases, all
of which were decided before Ledbetter, and none of which binds
us here.[8]

        In a pattern or practice case, a plaintiff must show
that "racial discrimination was the company's standard operating
procedure -- the regular rather than the unusual practice."
Cooper v. Fed. Reserve Bank, 467 U.S. 867, 876 (1984) (quoting
Teamsters v. United States, 431 U.S. 324, 336 (1977)).  At the
very least, this requires plaintiffs to demonstrate, either
through direct or statistical evidence, specific discriminatory
acts that took place during the class period that could give rise
to such an inference.  It is not sufficient for plaintiffs to

_____

        [7](...continued)
anyway, because we resolve the underlying motion against
plaintiffs we think it prudent to consider all of their
arguments, even those that we would otherwise strike.

        [8] The only Third Circuit case that plaintiffs cite,
McAleese v. Brennan, 483 F.3d 206 (3d Cir. 2007), is a case
dealing with the continuing violations doctrine in the context of
habeas corpus claims.  Its relevance here, particularly where
there is an intervening Supreme Court decision, is limited at
best.

identify "sporadic acts of discrimination."  <u>Robinson v. Metro-North Commuter R.R.</u>, 267 F.3d 147, 158 (2d Cir. 2001) (citing <u>Teamsters</u>, 431 U.S. at 336).  Though <u>Ledbetter</u> may not apply directly to the facts here, that case specifically held that, so long as the pay structure itself is not discriminatory,[9] "a new Title VII violation does not occur . . . when an employer issues paychecks pursuant to a system that is facially nondiscriminatory and neutrally applied."  127 S. Ct. at 2174 (internal quotation omitted).  <u>Ledbetter</u> makes clear that this is true even if the paycheck is less than it would have been absent a prior discriminatory act.

Plaintiffs here do not allege that the pay structure itself was in any way discriminatory.  Thus, a showing of disparate pay does not, by itself, demonstrate any discriminatory action taken during the class period.  Although Dr. Killingsworth's findings could be indicative of some

---

[9] This requirement arises out of the Court's decision in <u>Bazemore v. Friday</u>, 478 U.S. 385 (1986) (per curiam).  There, two formerly segregated employers had merged, but had retained separate pay structures.  Thus, white employees and black employees were paid based on different pay scales.  The Court held that, under those circumstances, each paycheck <u>was</u> a separate discriminatory act because it involved the use of a facially discriminatory pay scale.  <u>Ledbetter</u> distinguished <u>Bazemore</u> by limiting it to cases in which the pay structure itself was discriminatory.  Since there are no allegations of discriminatory pay <u>structure</u> here, <u>Bazemore</u> does not apply.

discrimination on Exelon's part, he is unable to link them to any action that was taken during the proposed class period.  Thus, for purposes of demonstrating that the putative class members were the victims of a pattern or practice of discrimination during the class period alleged, his findings are not probative.

Even were Dr. Killingsworth's findings relevant to the issues before us, they would be of limited probative value because they fail to make any allowance for job duties.  A Title VII claim based on disparities in compensation requires a showing that the jobs being compared are at least substantially equal. See, e.g., Gunther v. Washington County, 623 F.2d 1303 (9th Cir.) aff'd 452 U.S. 161 (1979); Orr v. Frank R. MacNeill & Son, Inc., 511 F.2d 166 (5th Cir. 1975).  Dr. Killingsworth's analysis includes no factor for job duties, and only examines each employee's business unit.  Thus, even had plaintiffs claimed discrimination by reason of pay disparity, which they have not, Dr. Killingsworth's findings would be insufficient to support class certification on those grounds.

### 2.  Employee Grade Level

Dr. Killingsworth's report next examines employee grade level.  Non-executive employees at Exelon are categorized into six compensation grades, numbered E01 to E06, with E01 the lowest

11

grade and E06 the highest.  Dr. Killingsworth's analysis finds
that, at least in 2005 and 2006,[10] black employees are under-
represented in the higher salary grades to a statistically
significant degree.

From plaintiffs' perspective, however, this finding
suffers from the same defect as Dr. Killingsworth's compensation
analysis: nothing ties it to Exelon's allegedly discriminatory
actions during the class period.  This is especially true because
plaintiffs' complaint contains no allegations of discriminatory
hiring.  There is clearly a strong correlation between the grade
an employee is hired into and his or her grade in some subsequent
year.[11]  Thus, for most employees, the only Exelon action that
determines their grade is the hiring decision, a decision that is
not at issue in this case.

Because Dr. Killingsworth's findings as to compensation
and grade are not probative of plaintiffs' claims, we will

---

[10] And also in 2004 if business unit and performance
evaluation rating are not considered.

[11] In 2006, for example, there were thirty-eight
promotions to a new pay grade among 614 employees in the relevant
groups, according to defendant's expert report.  See Def. Mem.
ex. 2, app. B at 8.  Even examining the entire class period, most
of the relevant employees were never promoted and so remained in
the same pay grade for the entire time.

consider only his findings as to performance evaluation and promotion in evaluating plaintiffs' motion.

## C. **Rule 23(a) Requirements**

Rule 23(a) imposes four requirements on parties who seek class status for their claims:  numerosity, commonality, typicality, and adequacy.  We will address each in turn below.

### 1. **Numerosity**

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  Exelon does not explicitly challenge numerosity, but notes the factual difficulties presented by the proposed class definition.  See Def. Mem. at 23 n.10.  We have already discussed these at some length.  See supra § II.A.  Plaintiffs claim that the class contains precisely 195 members.  See Pl. Mem. at 66.  This number includes all black employees employed in the relevant units and locations between October 24, 2002 and the cutoff date for the data that Dr. Killingsworth analyzed.[12]  See Pl. Mem. ex 1 at 2 n.1.  While plaintiffs obviously believe that all such employees meet the factual requirements they have included in their

---

[12] The record does not reveal what that cutoff date was, but, given that the proposed class continues until "the present," this number cannot be precisely accurate.

proposed class definition, it is far from clear that this is
true.  Because plaintiffs' proposed class certification has far
greater problems, however, we will not dwell on the numerosity
question but will instead rely on the deficiencies that are clear
to us on the current record.

## 2.   <u>Commonality</u>

Many courts have found the commonality requirement to
present a relatively low bar because the proponent of class
status need only show a single common issue of law or fact.  <u>See,
e.g.</u>, <u>Baby Neal ex rel. Kanter v. Casey</u>, 43 F.3d 48, 56 (3d Cir.
1994).  It is not, however, sufficient merely to show a factual
or legal question that must be answered for each class member.
The proponent of class certification must show that class members
share a common question whose answer is amenable to class-wide
resolution.  As the Supreme Court has phrased it, the issues in a
class action should "turn on questions of law applicable in the
same manner to each member of the class."  <u>Falcon</u>, 457 U.S. at
155 (quoting <u>Califano</u>, 442 U.S. at 701).  "[I]f broad
discrimination is the only common denominator in the class, this
does not satisfy the commonality requirement."  <u>Webb v. Merck &
Co.</u>, 206 F.R.D. 399, 404 (E.D. Pa. 2002) (quoting <u>Zachery v.

Texaco Exploration & Prod., 185 F.R.D. 230, 238 (W.D. Tex. 1999)).

Plaintiffs purport to identify several common questions of law and fact to support their motion, see Pl. Mem. at 67, but although some of these questions may be relevant to the claims of all class members, they are not suitable for class resolution. Those questions that would potentially be amenable to resolution on a class-wide basis are not applicable to all class members.

For example, plaintiffs' first proposed question is "whether PECO's performance evaluation policy or practices negatively impact Class members." Id.  Were a question of this sort suitable to demonstrate commonality, that requirement would become a puff of smoke.  Plaintiffs could simply propose the question "has employer discriminated against class members" and always meet the commonality requirement.  Obviously, something more is necessary.

Even were this question sufficient, plaintiffs have failed to show that it is amenable to class-wide proof.  The relevant statistical evidence that plaintiffs have presented applies only to subsets of the class: employees who have been denied promotions and employees who have received poor performance evaluations.  Even were this statistical evidence sufficient to warrant certification of some class, it could not

15

support certification of a class as broad as that which plaintiffs propose here.

Other supposedly common questions that plaintiffs identify apply only to a small fraction of the proposed class. The question "whether Class members are less likely to be promoted into intermediate- or high-level salary grades than are otherwise-similar White employees," id., for example, only applies to class members who were eligible for a promotion into those grades.[13]

Other questions, such as "whether Class members are less likely to be in high-level salary grades," id., are simply irrelevant to a Title VII suit.  As we discussed above, it is not sufficient for plaintiffs merely to identify a disparity in the representation of black employees in higher salary grades.  They must also identify a pattern or practice of employment decisions during the class period that has resulted in this disparity. Because they have failed to do so, the existence of the disparity is not probative of a Title VII violation.

---

[13] At the very least, eligibility includes being qualified for a job in one of the described grades.  There is no evidence (and, indeed, it is highly improbable) that all class members are even arguably qualified for a position in the intermediate and higher salary grades.

This is, in fact, the biggest problem with plaintiffs' claim to commonality: they have failed to identify a policy, practice, or procedure that is the root of the alleged harm for all class members.  While some class members have allegedly been harmed as a result of receiving artificially low performance evaluations, see, e.g., id. at 19-27 (describing the allegations of Vilna Gaston, Stacy Barnes, and Angela George), others have been denied promotions for which they claim to be qualified, see, e.g., id. at 38-41 (describing the allegations of James Lary). The problem is that "Title VII prohibits discriminatory employment practices, not an abstract policy of discrimination." Falcon, 457 U.S. at 159 n.15.  Allegations of a broad policy of discrimination will support a Title VII claim only where they are supported by "significant proof" that the policy "manifested itself in hiring and promotion practices in the same general fashion."  Id.  Here, plaintiffs offer as proof only the various experiences of the eight named plaintiffs and statistical evidence that weakly suggests some disparity in the treatment of black employees at some time.  That is not sufficient to allow us to certify the broad class plaintiffs propose here.

We find this case remarkably similar to Webb[14] where plaintiffs sought to certify a class of all black employees in two of Merck's divisions.  There, as here, the class consisted of "employees in a multitude of occupations" and named plaintiffs who alleged they "were the victims of a myriad of discriminatory practices."  206 F.R.D. at 405.  There, as here, the claims were based on "individual decisions made by [many] individual managers . . . all of whom had varying degrees of autonomy over compensation and promotion decisions."  Id. at 406.

In Webb, Judge Weiner expressed concern with the effects of finding that an employer could be liable under Title VII if it granted its managers some, but not total, discretion in evaluating employees.  "[A] decision by a company to give managers the discretion to make employment decisions, and the subsequent exercise of that discretion by some managers in a discriminatory manner, is not tantamount to a decision by a company to pursue a systematic, companywide policy of intentional discrimination, i.e., a pattern or practice of discrimination." Id. (quoting Sperling v. Hoffmann-LaRoche, Inc., 924 F. Supp. 1346, 1363 (D.N.J. 1996)).  We share our late colleague's concern.  If the evidence here suffices to certify a class of all

---

[14] Webb was, perhaps not surprisingly, brought by some of the same plaintiffs' counsel as this case.

black employees, every employer that gives its managers discretion in employment matters will face a similar suit.  Title VII simply does not supply such a blunt instrument.

We should also note that our decision in no way forecloses a remedy for any employees who may have been the victims of discriminatory acts.  Those employees, including the named plaintiffs here, still have a remedy under Title VII if they can prove the elements of a discrimination claim.  We are unwilling, however, to find that the discretion Exelon granted to its managers represented a companywide policy of intentional discrimination.

We therefore find that plaintiffs have failed to satisfy the commonality requirement of Fed. R. Civ. P. 23(a)(2).

### 3.   Typicality

The next requirement of Rule 23 is that the proponent of class certification must demonstrate that the claims of the named parties are typical of the claims of the class as a whole. "[T]ypicality entails an inquiry whether 'the named plaintiff's individual circumstances are markedly different or . . . the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based.'"  Eisenberg v. Gagnon, 766 F.2d 770, 786 (3d Cir. 1985)

(quoting <u>Weiss v. York Hospital</u>, 745 F.2d 786, 809 n.36 (3d Cir. 1984)).

Plaintiffs are correct to argue that the fact that the named plaintiffs suffered different injuries than other members of the class is not a <u>per</u> <u>se</u> bar to a finding of typicality. "Where an action challenges a policy or practice, the named plaintiffs suffering one specific injury from the practice can represent a class suffering other injuries, so long as all the injuries are shown to result from the practice." <u>Baby Neal</u>, 43 F.3d at 58. But here, as we discussed above, plaintiffs have failed to show a practice from which an injury to each class member resulted. Plaintiffs can be typical either because they suffered the same injury or were injured by the same practice as other class members. Here, however, named plaintiffs can show neither.

Where the named defendants are subject to particular defenses, that will also frequently defeat typicality. <u>See</u> <u>Donaldson</u>, 2006 WL 2668573 at *4. This is because, where plaintiffs are subject to specific defenses, there is a great risk that the litigation will devolve into an endless series of individual trials, the very result the typicality requirement is designed to avert. Here, for example, two of the plaintiffs were allegedly denied promotions and salary increases because they had

20

been placed on Performance Improvement Plans ("PIPs") for legitimate reasons.  Exelon has already raised this issue and will certainly do so again at trial.  Since plaintiffs propose trying the individual claims together with classwide liability, see Pl. Mem. at 85, these individual issues are very likely to swamp the litigation.[15]

For these reasons, we find that plaintiffs do not meet the typicality requirement of Rule 23(a)(3).

### 4.  Adequacy

The adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent."  Amchem Prods., Inc. v. Windsor, 521 U.S. 592, 625 (1997).  Although Exelon raises a number of concerns about plaintiffs' adequacy, because these are largely bound up with plaintiffs' attempt to resurrect the Rule 23(b)(2) issue and

---

[15] Because the class action is a device born not of absolute right but of procedural convenience, we need not make more specific factual findings to bolster our concern that these individual issues are likely to overrun the underlying litigation.  We think it clear that granting class certification in this case would not "save[] the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion." Califano, 442 U.S. at 701.  We need not find that defendant has proven that to be so.

because we have plenty of other reasons to deny plaintiffs'
motion, we will defer this discussion to the next section.

### D.   **Plaintiffs' Motion to Amend**

In the midst of the class certification process,
plaintiffs also seek leave to amend their complaint.  Plaintiffs
assert that they are seeking this amendment in order to narrow
the issues in the case, clarify the policies they are
challenging, and make clear their intention not to seek
compensatory and punitive damages on behalf of the class.

It appears to us, however, that the primary reason for
seeking to amend the complaint is to reinstate the Rule 23(b)(2)
allegations we struck from the complaint in our June 14 Order.
Regardless of plaintiffs' reasons for seeking leave to amend,
their delay in doing so, the potential prejudice to defendant's
desire to speedily resolve this case, and the futility of the
amendments they seek to make all support our denial of their
motion.

Fed. R. Civ. P. 15(a) tells us that leave to amend the
complaint "shall be freely given when justice so requires."  The
Supreme Court has held that if a motion to amend is denied, the
court must state its reasons.  The Court listed several reasons
why a court might do so: "undue delay, bad faith or dilatory

motive on the part of the movant, repeated failure to cure
deficiencies by amendments previously allowed, undue prejudice to
the opposing party by virtue of allowance of the amendment,
futility of amendment."  <u>Foman v. Davis</u>, 371 U.S. 178, 182
(1962).[16]

In response to Exelon's motion to strike class
allegations from the complaint, plaintiffs stated that they "did
not oppose" striking compensatory and punitive damage claims on
behalf of the class.[17]  We noted that, because Exelon had not
moved to strike those allegations, removing them would require a
motion under Rule 15(a) or a stipulation among the parties.  <u>See</u>
June 14 Order at 3 n.3.  Inexplicably, however, plaintiffs waited
more than four months to make such a motion.

Further, plaintiffs' proposed second amended complaint
fails to accomplish its stated goals.  Although plaintiffs
purport to disclaim any right to compensatory and punitive
damages on behalf of the class, they ask us to enter judgment
"for all available remedies and damages under law and equity."

---

[16] Despite plaintiffs' implication otherwise, the
Supreme Court manifestly intended this to be a non-exclusive list
since it prefaced the list with the phrase "such as" and ended it
with "etc."  <u>Id.</u>

[17] Tellingly, the named plaintiffs have never suggested
that they would be willing to forgo these remedies on behalf of
themselves.

2d Am. Compl., Prayer for Relief, ¶ (f).  Although plaintiffs

purport to clarify the definition of the class, as we have

discussed above, the only substantive change to the class

definition -- the addition of the requirement that the policies

at issue are discriminatory -- actually complicates class

certification.  The proposed amendment also purports to clarify

the allegations of the named plaintiffs and the policies being

challenged.  While this is a laudable goal, seeking these

clarifications after the close of class discovery does not help

to apprise defendant of the basis for plaintiffs' suit, which is,

after all, the primary purpose of a clear complaint.

        Finally, plaintiffs seek to amend the complaint to name

the proper defendants,[18] claiming that "because discovery

revealed that some of the Named Plaintiffs worked for Exelon

Business Services Company at some point during the proposed class

period," it should also be a defendant.  Pl. Mem. at 3[19] n.1.

_____

        [18] In the reply brief plaintiffs seek leave to file in
relation to this motion, plaintiffs assert that they have
withdrawn this proposed amendment.  Pl. Rep. at 8.  As far as we
can ascertain, the docket does not reflect this withdrawal.
There is no way for us to know what other undocumented
modifications plaintiffs have made to their proposed amended
complaint or whether they have discussed them with defendant.  We
must, therefore, decide the motion that has actually been filed
with the Court, a motion which includes the amendment to add EBS.

        [19] Actually, plaintiffs' brief lacks page numbers.
                                        (continued...)

The claim that EBS's role as a defendant was only revealed in discovery is preposterous.  Two of the named plaintiffs filed PHRC complaints against EBS in 2004 and 2005.  See Def. Resp. exs. 15 & 16.  For plaintiffs to claim that they have only now discovered that EBS is a proper defendant strains credulity.

Plaintiffs' delay in filing this motion would itself be sufficient reason to deny it, but we must also be concerned with potential prejudice to the defendant.  Although plaintiffs blithely claim that no additional discovery is required, the proposed amendment to the complaint -- which adds an additional defendant -- at the very least requires Exelon to undertake additional investigation, a process which will likely turn up additional responsive documents.  Further, because the proposed amendment substantially changes the proposed class definition, it may, in fact, require significant additional discovery, notwithstanding plaintiffs' soothing and unsupported claim to the contrary.  The result of granting this amendment would be to further delay this case, which is already more than a year old.[20]

---

[19](...continued)
Fortunately, it is short enough that we can count its pages before running out of fingers.  In the future, however, we would appreciate the courtesy of numbered pages for ease of reference.

[20] The delay in resolving this matter is almost entirely attributable to plaintiffs.  The original complaint was
(continued...)

As the party moving to amend the pleadings, plaintiffs bear the burden of explaining the reasons for their delay in seeking the amendment.  <u>Tarkett Inc. v. Congoleum Corp.</u>, 144 F.R.D. 289, 290 (E.D. Pa. 1992).  They make no attempt to shoulder this burden, instead simply claiming only that "[t]he proposed amendments fall well within the bounds of reasonable amendment," Pl. Mem. at 3, and should therefore be allowed.  This Court, however, takes seriously its obligation to ensure the timely resolution of cases before it, <u>see</u> <u>Civil Justice Expense and Delay Reduction Plan</u>, and will not ratify plaintiffs' apparently contrary belief.

It is also of great concern to us that plaintiffs seem, through this amendment, to be attempting an end-run around our June 14 Order.  Although the proposed amended complaint fails to address any of our substantive concerns about Rule 23(b)(2)

---

[20](...continued)
filed on October 24, 2006, but was apparently never served on defendant.  The Court's Deputy Clerk sent a letter noting that the case would be dismissed under Fed. R. Civ. P. 4(m) if service was not made in a timely manner.  In response, plaintiffs did not, in fact, serve Exelon, but instead filed an amended complaint on February 21, 2007, effectively restarting the clock for service.  Plaintiffs have twice sought eleventh-hour extensions of deadlines we had established, which we have denied. Plaintiffs' behavior gives every appearance that they are seeking to draw out the litigation as much as possible.  We are unwilling to help them do so.

certification in this case,[21] plaintiffs seem to believe that they can reopen the issue through the simple ploy of amending the complaint.  They are mistaken.

Finally, we note that plaintiffs' proposed amendments are futile.  The proposed amendments do nothing to address our grave concerns about class certification, which are the primary topic of this opinion.  Granting plaintiffs' motion would still result in the denial of their class certification motion.  There is, therefore, no reason for us to do so.

Because (a) plaintiffs have unduly delayed in requesting this amendment, (b) the proposed amendments will cause unnecessary further delay to the resolution of this case, (c) it will prejudice defendants, and (d) the proffered amendments are futile, we will deny plaintiffs' motion to amend their complaint.

---

[21] As we noted above, the proposed amendment to the complaint does not, in fact, remove plaintiffs' claims for compensatory and punitive damages.  Further, our Order expressly held that, even if those claims were removed, Rule 23(b)(2) certification would still be inappropriate.  See June 14 Order at (s) ("Thus, even if the only monetary awards are related to back pay, the Allison factors tip strongly against such an award being 'incidental.'").  The proposed amendment does not even purport to address those concerns, but simply argues that we were mistaken in our findings.  Pl. Mem. at 2.  Such a contention is only properly made in the context of a motion for reconsideration, which must be filed within ten days of the Order for which reconsideration is sought.  Loc. R. Civ. P. 7.1(g).  Plaintiffs failed to file such a motion and we see no reason to cure their failure by considering those issues now.

### E.   **Rule 23(b) Requirements**

#### 1.   **Rule 23(b)(2)**

Technically, there is no need for us to address the Rule 23(b)(2) certification issue because we have ordered the (b)(2) allegations stricken from the complaint, see June 14 Order, and have denied plaintiffs' motion to amend the complaint to re-insert them.  Nevertheless, in the interest of completeness, and to show that we Really Meant It, we will briefly reiterate our findings on that subject and address plaintiffs' new arguments here.

"Subsection (b)(2) class actions are 'limited to those class actions seeking primarily injunctive or corresponding declaratory relief.'"  Barnes v. Am. Tobacco Co., 161 F.3d 127, 142 (3d Cir. 1998) (quoting 1 Newberg on Class Actions § 4.11, at 4-39).  Finding no binding precedent on how to determine whether the relief plaintiffs seek is "primarily" injunctive or declaratory, our June 14 Order adopted the standard in Allison v. Citgo Petroleum Co., 151 F.3d 402 (5th Cir. 1998).  We reasoned that, although our Court of Appeals has not adopted the Allison standard, it has ruled that a district court does not err by applying it, see Barabin v. Aramark Corp., 2003 WL 355417 (3d Cir. Jan. 24 2003) (unpublished), and cases in lower courts have surmised that "the Court of Appeals will join the Fifth, Seventh,

28

and Eleventh Circuits [in adopting <u>Allison</u>] when an appropriate case reaches it." <u>Pichler v. UNITE</u>, 228 F.R.D. 230, 256 (E.D. Pa. 2005); <u>see also</u> <u>Thompson v. Merck & Co.</u>, 2004 WL 62710 (E.D. Pa. Jan. 6, 2004) at *4.  Since our Court of Appeals had demonstrated at least its tacit approval of <u>Allison</u> and since neither party presented us with an alternative standard, we chose to apply it.

Allison held that "monetary relief predominates in (b)(2) class actions unless it is incidental to requested injunctive or declaratory relief."  151 F.3d at 415.  The Court defined "incidental" as "damages that flow directly from liability to the class <u>as a whole</u> on the claims forming the basis of the injunctive or declaratory relief" and said that "[i]deally, incidental damages should be only those to which class members automatically would be entitled once liability to the class (or subclass) as a whole is established." <u>Id.</u>  "[S]uch damages should at least be capable of computation by means of objective standards and not dependent in any significant way on the intangible, subjective differences of each class member's circumstances." <u>Id.</u>

Although plaintiffs have at various times and in various ways sought to withdraw their claims for compensatory and punitive damages on behalf of the class, they have consistently

maintained that class members are entitled to back pay.  In the
June 14 Order, we found that because those employees who were
harmed by defendant's allegedly discriminatory conduct would be
entitled to back pay for a variety of different reasons -- some
employees were denied promotions, some were denied pay increases,
some were denied developmental opportunities, some had no claim
to any monetary harm at all -- no objective standard could
quantify the back pay due to each class member and the claims
would depend on each class member's unique circumstances.  For
these reasons, we found that Rule 23(b)(2) certification was
inappropriate and struck those allegations from the complaint.

        In their class certification motion, plaintiffs argue
for the first time that we should instead apply the ad-hoc
standard of Robinson, 267 F.3d at 164.  That approach would
certify (b)(2) classes when "(1) the positive weight or value [to
the plaintiffs] of the injunctive or declaratory relief sought is
predominant even though compensatory or punitive damages are also
claimed, and (2) class treatment would be efficient and
manageable, thereby achieving an appreciable measure of judicial
economy."  Id. (internal quotations omitted).  Under Robinson,
they argue, we must hold a hearing to determine what form of
relief predominates in the minds of the class members.  Even were
we to apply that standard, for reasons that we will discuss in

more detail below, we could not find that class treatment would be efficient or manageable.  Because this case, in very large measure, turns on the individual determinations of autonomous managers rather than on common questions of fact and law, we find that class action treatment would not "achiev[e] an appreciable measure of judicial economy," but rather would create an unwieldy miasma, rife with mini-trials and procedural headaches.  For that reason, even under the <u>Robinson</u> approach, Rule 23(b)(2) certification would be inappropriate.

### 2.   Rule 23(b)(3)

Plaintiffs also seek certification under Rule 23(b)(3). Rule 23(b)(3) certification requires the proponent to show both that common questions of law and fact predominate over questions that are unique to individual plaintiffs, and that a class action is superior to other possible methods of resolving the conflict.

The predominance requirement of Rule 23(b)(3) is significantly more rigorous than the commonality requirement of Rule 23(a)(2).  <u>See</u> <u>Newton</u>, 259 F.3d at 187; <u>McMahon Books, Inc. v. Willow Grove Assocs.</u>, 108 F.R.D. 32, 35 (E.D. Pa. 1985). Thus, our finding that plaintiffs have failed to meet the commonality requirement is, by itself, dispositive of the Rule 23(b)(3) question.

31

Even were we to find that some common questions exist, however, it is clear that they do not predominate in this case. The very fact that plaintiffs devote nearly forty pages of their brief to the specific allegations of the named plaintiffs is evidence of this fact.  Equally problematic is plaintiffs' insistence on resolving the individual damage claims of the named plaintiffs alongside the class-wide liability issues.  The unwillingness of the named plaintiffs to subsume their individual claims to those of the class is yet another indication that this matter is unsuitable for class treatment.[22]

In cases like this where plaintiffs each allege discrimination, but the discrimination manifests itself differently for each of them, courts regularly deny class certification.  In <u>Thompson</u>, Judge Weiner denied class certification after finding that "[a]lthough all the plaintiffs claim they were discriminated against by Merck on the basis of

---

[22] It is this issue that is at the heart of Exelon's adequacy argument, which we declined to address in detail above. In essence, Exelon claims the named plaintiffs are forgoing a remedy on behalf of the class that they continue to seek for themselves.  Further, it is likely that, were the equitable claims to be litigated on a class basis, claim preclusion would bar members of the class from later seeking compensatory and punitive damages.  Named plaintiffs seek to certify a class that would grant limited monetary relief to their fellow class members and would potentially bar them from any future damages claims, while still seeking a significant payout, including potentially punitive damages, for themselves and their attorneys.

their race, they allege that they were exposed to the alleged
discrimination in varying ways, by different people, for
different amounts of time and experienced different injuries."
2004 WL 62710 at *4.  Similarly, in <u>Donaldson</u>, we denied class
certification because we found that plaintiffs had not identified
"a harm that all white males suffer at all Exelon sites as a
result of the Exelon corporate culture."[23]  2006 WL 2668573 at
*5.  Those concerns apply equally to this case, where no single
factor unifies the claims of all class members.

Rule 23(b)(3) also requires us to determine whether
class action litigation is a superior method of resolving the
claims at issue.  Plaintiffs' only argument on this point is that
class action litigation is the only method of ensuring that class
members with relatively small claims will have access to counsel
and be allowed to litigate their claims.  Pl. Mem. at 81-82.

First, we note that plaintiffs provide no evidence of
any claimants who would be unable to litigate their claims in the
absence of class status.  Second, and more importantly, the fee-
shifting provisions of Title VII exist precisely to address this
concern.  Finally, were class members to bring suit individually,

---

[23] It is ironic that within a period of eighteen
months, employment class actions on behalf of both white male
employees at Exelon and black employees at Exelon were filed in
this district and were randomly assigned to the same judge.

they would not be required to limit their claims to back pay, but could also seek the compensatory and punitive damages that named plaintiffs are so willing to toss overboard in the interest of saving class certification, and so would potentially be entitled to significantly larger damage awards than those this case seeks on their behalf.  We find, therefore, that there is no merit to plaintiffs' argument that certain class members will be unable to receive justice in the absence of class certification.

It is perhaps not surprising that plaintiffs make no further argument that class action is a superior means of resolving the issues raised here.  For all of the reasons we have discussed at length above, it is clear that this case is poorly suited to class resolution.  Because the claims of all class members are unified by neither the employer action that caused them or the damage that the employees suffered, there is no basis for plaintiffs to claim that class action is a superior means of resolving this conflict.[24]

---

[24] Indeed, it is not even clear from the record before us that the cases of the eight named plaintiffs "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences" or share a common question of law or fact sufficient to make joinder of their cases proper under Fed. R. Civ. P. 20. At the close of discovery, therefore, we will order plaintiffs to show cause why the remaining claims should not be recast into eight separate actions.

For the reasons stated above, we find that plaintiffs have not met their burden of demonstrating that this action meets the predominance and superiority requirements of Rule 23(b)(3).

**III.  <u>Conclusion</u>**

Because we find on multiple grounds that plaintiffs have failed to meet the requirements of both Rule 23(a) and Rule 23(b), plaintiffs' motion for class certification must be denied.


BY THE COURT:



<u>/s/ Stewart Dalzell, J.   </u>

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

VILNA GASTON, et al.            :      CIVIL ACTION
                                :
        v.                      :
                                :
EXELON CORPORATION              :      NO. 06-4762

ORDER

AND NOW, this 30th day of November, 2007, upon
consideration of plaintiffs' motion for class certification
(docket entry # 52), defendant's memorandum in opposition (docket
entry # 59), plaintiffs' motion for leave to file a reply (docket
entry # 63), plaintiffs' motion for leave to file a second
amended complaint (docket entry # 51), defendant's response to
that motion (docket entry # 56), and plaintiffs' motion for leave
to file a reply to that motion (docket entry # 58), and for the
reasons articulated in the accompanying Memorandum of Law, it is
hereby ORDERED that:

1.  Plaintiffs' motion for leave to file a reply in
support of class certification is GRANTED;

2.  Plaintiffs' motion for class certification is
DENIED;

3.  Plaintiffs' motion for leave to file a reply is
support of their motion to file an amended complaint is GRANTED;

4.  Plaintiffs' motion for leave to file an amended
complaint is DENIED;

5.   All merits discovery regarding the named plaintiffs' claims, including any required expert reports, shall be COMPLETED by February 15, 2008;

6.   By February 29, 2008, plaintiffs shall SHOW CAUSE why the claims of the eight remaining plaintiffs should not be severed into separate actions; and

7.   Scheduling of dispositive motion practice shall ABIDE our resolution of the question of whether joinder in this case is proper.

BY THE COURT:


/s/ Stewart Dalzell, J.